IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| Michael Troche, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>Bimbo Foods Bakeries Distribution, Inc.,<br><br>Defendant. | Court File No. _____<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND**<br><br>**(EQUITABLE RELIEF SOUGHT)** |

Plaintiff, on behalf of himself and other similarly situated individuals, by and through his undersigned counsel, files this Collective and Class Action Complaint, and avers as follows:

## NATURE OF ACTION

1. This is a Collective and Class Action Complaint brought to obtain declaratory, injunctive and monetary relief on behalf of a class of individuals who operate(d) as distributors for Defendant, Bimbo Foods Bakeries Distribution Inc. ("Bimbo" or "Bimbo Distribution") and who are or were illegally characterized as independent operators or independent contractors. Plaintiff alleges violations of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1, *et seq.*; N.C. Admin. Code § 12.0305, and North Carolina common law.

2. The class consists of all individuals who operate(d) as Distributors for Bimbo and are or were classified as independent operators or independent contractors, anywhere in or for the states of the United States and the District of Columbia (together "state(s)"), in which Defendant contracts with Distributors or distributes its bakery products, at any time during the applicable limitations period ("Class" or "Distributors").

3.      This action challenges both the misclassification of these individuals and Defendant's denial to Plaintiff and the Class of the rights, obligations, privileges and benefits owed to them as employees. Plaintiff also seeks remedies for unjust enrichment.

## PARTIES

4.      Plaintiff Michael Troche is a resident of North Carolina, who works as a Bimbo Distributor in that state. In that position he delivers Bimbo's bakery products to local retailers, stocks the products on the retailer's shelves, and removes stale product. He has worked as a Distributor since May 2007, first for George Weston Bakeries Distribution Inc. and now for Bimbo, which purchased George Weston in November 2009. Plaintiff routinely works 50-55 hours per week for which he does not receive overtime pay. He is misclassified as an independent contractor.

5.      Bimbo is a corporation organized and existing under the laws of the state of Delaware. Its principal place of business is 255 Business Center Dr., Horsham, PA 19044. Bimbo is a subsidiary of Bimbo Foods, Inc. ("Bimbo Foods"). The primary business of Bimbo Distribution is to deliver or distribute fresh baked goods to retailers.

6.      Bimbo hires individuals such as Plaintiff, whom it classifies as independent contractors, to distribute baked products throughout the United States. The brands consist of products available from Bimbo Foods, including Bimbo, Brownberry, Arnold, Marinela, Mrs Bairds', Orowheat, Boboli, Entenmann's, Francisco, Stroehmann, Tia Rosa, Freihofer's and Thomas.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331, federal question jurisdiction, 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005, and 28 U.S.C. § 1367, supplemental jurisdiction (for North Carolina claims).

8. There are more than 100 members in the Class, and the amount in controversy, in the aggregate, exceeds $5 million exclusive of interest and costs.

9. Venue is proper in this Court under 28 U.S.C §§ 1391(b)(1) and 1391(c) because Bimbo does business in North Carolina.

10. Plaintiff brings this action on behalf of himself, a Federal Collective Group and a North Carolina Class.

## COLLECTIVE ACTION ALLEGATIONS

11. Plaintiff brings Count I of this Complaint as a collective action, alleging violations of the FLSA on behalf of himself and all similarly situated individuals. This "Federal Collective Group" is defined as:

> all individuals who, through a contract with Defendant or otherwise, performed or perform as Distributors for Defendant, and who were classified by Defendant as "independent contractors" or "independent operators," (collectively "Covered Positions") anywhere in the United States at any time from the date that is three years preceding the commencement of this action through the close of the Court-determined opt-in period and who file a consent to join this action pursuant to 29 U.S.C. § 216(b).

The "Federal Collective Group" also includes the named Plaintiff in this action.

12. Plaintiff and current and former employees of Defendant in Covered Positions are similarly situated in that they have substantially similar job requirements and pay provisions, and are subject to Defendant's common practice, policy, or plan of treating them like employees but refusing to pay them overtime in violation of the FLSA.

13. On information and belief each Distributor must sign a "distribution agreement" with Defendant as a mandatory condition of employment ("Agreement"). The Agreement characterizes the Distributor as an independent contractor and the Distributor is paid as an independent contractor, but Defendant otherwise treats its Distributors as if they were employees.

14. Defendant regularly permitted and required Plaintiff and members of the Federal Collective Group to work more than 40 hours per week without overtime compensation.

15. Upon information and belief, Defendant knew that Plaintiff and all similarly situated individuals performed work that required overtime pay.

16. Defendant has therefore operated under a scheme to deprive these employees of overtime compensation by failing to properly compensate them for all time worked.

17. Defendant's conduct, as set forth in this Complaint, was willful and has caused significant damages to Plaintiff and all similarly situated individuals.

18. Count I of this Complaint for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), since the claims of the Plaintiff are similar to the claims of current and former "independent contractors" who worked for Defendant.

19. Defendant is liable under the FLSA for failing to properly compensate Plaintiff and all similarly situated individuals, and notice of this lawsuit should be sent to them. Those similarly situated employees are known to Defendant and are readily identifiable through Defendant's payroll records.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings Counts II through V of this Complaint as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a "North Carolina Class" defined as follows:

> All individuals who, through a contract or agreement with Defendant or otherwise, performed or perform in a Covered Position in North Carolina at any time from the date that is three years preceding the commencement of this action through the close of the court-determined opt-out period.

21.     Plaintiff reserves the right to redefine the Class prior to class certification.

22.     <u>Numerosity</u>: Members of the North Carolina Class are so numerous that their individual joinder is impracticable. The precise number of Class members is unknown to Plaintiff. However, upon information and belief, the Class numbers approximately 30-50 distributors. The true number of Class members is likely known by Defendant, and thus, Class members may be notified of the pendency of this action by first class mail, electronic, and published notice.

23.     <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiff and the Class, and those questions predominate over any questions that may affect individual Class members, and include the following:

    a. whether Plaintiff and members of the Class have been misclassified as independent contractors and actually were or are employees of Defendant;

    b. whether Defendant has violated the rights of Plaintiff and members of the Class under the North Carolina Wage and Hour Act and common law by failing to pay them overtime, making illegal deductions from their wages, depriving them of other benefits of being employees and requiring them to pay Defendant's expenses.

c. whether Plaintiff and members of the Class are entitled to injunctive and declaratory relief;

d. whether Plaintiff and members of the Class are entitled to an accounting by Defendant of all hours worked on behalf of Defendant, all wages paid by Defendant, all deductions made from wages by Defendant and the basis of all such deductions;

e. whether Defendant unlawfully failed to provide Plaintiff and members of the Class with workers' compensation insurance benefits, unemployment insurance benefits, and other benefits provided to Defendant's employees, including but not limited to health insurance, vacation, and retirement.

f. whether any alleged contract between Defendant and Plaintiff and Defendant and members of the Class should be rescinded as void as against public policy because Defendant induced them to incur substantial expenses as independent contractors while its policies, procedures and conduct in fact made them employees;

g. whether the Defendant has been unjustly enriched at the expense of Plaintiff and members of the Class.

24. _Typicality_: Plaintiff's claims are typical of the other members of the Class. Plaintiff is informed and believes that, like other Distributors, he was misclassified as an "independent contractor" or "independent operator," when he actually was a statutory and common law employee, and was therefore deprived of the protections and benefits of employee status under the law. Plaintiff had the same duties and responsibilities as other Class members, and was subject to the same policies and practices, and the same or substantially similar conditions of employment.

25.     Adequacy: The named Plaintiff will adequately represent the interests of the Class. He has been treated in the same manner as other Class Members by Defendant and has been damaged by this treatment in the same manner as other class Members by his exclusion from employee compensation programs, plans and agreements, and his payment of Defendant's expenses. Plaintiff is committed to vigorously prosecuting this action. He has retained counsel who are well-qualified to handle lawsuits of this type. Plaintiff has no interests that are adverse to those of the Class.

26.     Predominance: This case should be certified as a class action because the common questions of law and fact concerning Defendant's liability predominate over any individual questions, including the amount of damages incurred by each person.

27.     Superiority: A class action is the only realistic method available for the fair and efficient adjudication of the claims of the North Carolina Class. The expense and burden of individual litigation makes it impracticable for members of the Class to seek redress individually for the wrongful conduct alleged in this Complaint. Were each individual member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the Court, and create the risk of inconsistent rulings, which would be contrary to the interest of justice and equity.

## FACTUAL BASIS

28.     Defendant is a corporation whose business consists of distributing bakery product purchased from Defendant to customers within a distribution area.

29.     Defendant has entered into a relationship with the Plaintiff and others similarly situated to distribute bakery product purchased from Defendant to outlets within a defined distribution area. Outlets include convenience/drug stores, grocery stores,

restaurants/institutions, vending machines and business entities distributing products for vending machines, and other specified retail markets and stores that sell products directly to retail customers and do not require weekend service.

30. On information and belief the Agreement with Defendant that each Distributor must sign as a mandatory condition of employment characterizes the Distributor as an independent contractor. In reality, other than paying the Distributors as independent contractors and depriving them of employee benefits, the Defendant treats them as employees. The relationship between each Distributor and Defendant is essentially the same in all material respects.

31. At all relevant times Defendant has retained or exercised the right to control the Distributors' work in many ways. Among other examples of centralized, company-wide control, the Defendant:

   a. determines which Bimbo products may be distributed by each distributor;
   b. determines the outlets within a distribution area where the designated Bimbo products may be picked up;
   c. requires Distributors to purchase, operate and maintain expensive trucks for Defendant's exclusive benefit;
   d. prohibits Distributors from carrying any product on their truck that is deemed by Defendant to be a competitor to one or more or Defendant's products;
   e. dictates when product must be picked up from the warehouse;
   f. directs the days, times and locations for distributions;

g. negotiates contracts with outlets, negotiates retail prices with merchants for its products, determines promotions, and thereby controls profit margin of Distributors;

h. sets arbitrary schedules and levies fines on Distributors who do not comply;

i. decides how much product a Distributor can deliver;

j. requires Distributors to take more product than necessary or requested

k. tells Distributors when to remove product from shelves;

l. requires Distributors to offer promotions that end up causing the Distributors to lose money;

m. directs Distributors in how to manage their routes;

n. disciplines Distributors for not following its regulations;

o. threatens Distributors with a claim of "breach" when they make a business decision that does not align with Defendant's "rules";

p. requires Distributors to complete paperwork using a company-determined hand-held computer device;

q. requires Distributors to work so many hours on its behalf that they are extremely limited in having any time for additional distribution work;

r. limits the Distributors' ability to grow business;

s. controls whether Distributors can buy or sell routes;

t. removes sales areas or accounts from a distributor's sales area;

u. controls the distributor's profit margins;

v. handles customer complaints against the distributor;

w. withholds pay for certain specified expenses;

x.  requires purchase of insurance and numerous other purchases by the distributor;

y.  unilaterally terminates the employment relationship;

z.  unilaterally varies the standards, guidelines, and operating procedures and requirements of the distributor; and

aa. exercises various other rights to exert control over its distributors.

32. Plaintiff and Class members were, or are, required to accept Defendant's conditions of employment, without any changes made to the terms. Defendant did not permit its distributors to negotiate the terms and conditions of their employment.

33. Defendant subjects Distributors to training on their routes and engages in frequent route audits to check compliance with the route.

34. Defendant maintains compensation and benefit plans, agreements and programs available to persons who are classified by Defendant as employees. Upon information and belief, the benefit plans include: medical, dental and vision coverage, health care and family care spending accounts, life and accidental death and dismemberment insurance, short and long term disability, vacation and holiday pay, a retirement 401(k) plan, and educational assistance program.

35. Plaintiff and members of the Class were denied the rights and benefits of employment, including, but not limited to wages, overtime and the employee benefits described above. They also were denied workers' compensation and unemployment insurance, income tax withholding and contribution, meal, break and rest periods, and reimbursement of business expenses, including but not limited to, vehicle expenses.

36. Plaintiff and members of the Class have been excluded from the compensation plans and programs and benefit plans described above for all or a portion of their work for Defendant due to their misclassification as non-employees.

37. Plaintiff and members of the Class were, or are, required to pay Defendant's operating expenses, all of which should have been paid by Defendant, including, but not limited to:

    a. All costs associated with providing a reliable delivery vehicle, including the cost of the vehicle itself, fuel, vehicle maintenance and repairs;

    b. Insurance coverage, including vehicle insurance and work accident insurance;

    c. the costs of product loss, product return, and product expiration;

    d. tax and bookkeeping costs and,

    e. the cost of hand-held computer necessary to transact business.

38. Defendant pays or paid Plaintiff and members of the Class the difference between what the outlet paid for the product and what it charged Distributors to purchase the product.

39. During the relevant time period, Plaintiff Troche worked in excess of 40 hours every week of the year; he typically worked from 50-55 hours per week for which he was not paid overtime wages. Of the distributors that he observes and with whom he interacts, Plaintiff estimates that at least 80% similarly work more than 40 hours per week and are not paid overtime wages.

40. Defendant's mischaracterization of the distributors as independent contractors, the concealment and/or non-disclosure of the true nature of the relationship between Defendant and the distributors and the attendant deprivation of substantial rights and benefits of

employment are part of an on-going unlawful practice by Defendant which this Court should enjoin.

## COUNT I

## FAILURE TO PAY OVERTIME TO THE FEDERAL COLLECTIVE GROUP IN VIOLATION OF THE FLSA, 29 U.S.C. §§ 201 *et seq.*

### (On behalf of the named Plaintiff and the Federal Collective Group)

41. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding Paragraphs.

42. Section 206(a) of the FLSA provides in pertinent part:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages [not less than the federal minimum wage].

29 U.S.C. § 206(a) (2010).

43. Section 207(a)(1) of the FLSA provides in pertinent part:

> 1. Except as otherwise provided in this section, no employer shall employ any of his employees who in any work week is engaged in commerce or in the production of goods for commerce, for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1) (2010).

44. There are no exemptions applicable to Plaintiff or to other members of the Federal Collective Group.

45. For purposes of the FLSA, the employment practices of Defendant were and are uniform throughout the United States in all respects material to the claims asserted in this Complaint.

46.     Plaintiff and the other members of the Federal Collective Group, either regularly or from time to time, worked more than 40 hours per week, but did not receive overtime pay.

47.     In committing the wrongful acts alleged to be in violation of the FLSA, Defendant acted willfully in that they knowingly, deliberately and intentionally failed to pay overtime to Plaintiff and other members of the Federal Collective Group.

48.     As a result of Defendant's misclassification of its Distributors and failure to pay overtime, Plaintiff and the other members of the Federal Collective Group were damaged in an amount to be proved at trial.

49.     Therefore, Plaintiff demands that he and the other members of the Federal Collective Group be paid overtime compensation as required by the FLSA for every hour of overtime worked in any work week for which they were not compensated, plus interest, damages, penalties, attorneys' fees and any other remedies provided by law.

## COUNT II

### FAILURE TO PAY OVERTIME TO THE NORTH CAROLINA CLASS IN VIOLATION OF THE NORTH CAROLINA WAGE AND HOUR ACT

**(On behalf of named Plaintiff and the North Carolina Class)**

50.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding Paragraphs.

51.     The North Carolina Wage and Hour Act provides, in relevant part, as follows:

> Every employer shall pay to each employee who works longer than 40 hours in any workweek at a rate of not less than time and one half of the regular rate of pay of the employee for those hours in excess of 40 per week ... .

N.C. Gen. Stat. § 95-25.4. And,

> Every employer shall pay every employee all wages and tips accruing to the employee on the regular payday.

N.C. Gen. Stat. § 95-25.6.

52. Plaintiff and the other members of the North Carolina Class, either regularly or from time to time, worked more than 40 hours per week, but did not receive overtime pay.

53. In committing the wrongful acts alleged to be in violation of the North Carolina Wage and Hour Act, Defendant acted willfully, not in good faith and without reasonable grounds in that they knowingly, deliberately and intentionally failed to pay overtime to Plaintiff and other members of the North Carolina Class.

54. As a result of Defendant's misclassification of its Distributors and failure to pay overtime, Plaintiff and the other members of the North Carolina Class were damaged in an amount to be proved at trial.

55. Therefore, Plaintiff demands that he and the other members of the North Carolina Class be paid overtime compensation as required by the North Carolina Wage and Hour Act for every hour of overtime worked in any work week for which they were not compensated, plus interest, damages, penalties, attorneys' fees and any other remedies provided by law.

## COUNT III

### ILLEGAL DEDUCTIONS IN VIOLATION OF THE NORTH CAROLINA WAGE AND HOUR ACT

**(On behalf of named Plaintiff and the North Carolina Class)**

56. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding Paragraphs.

57. Plaintiff and the members of the North Carolina Class are actually employees of Defendant, not independent contractors.

58. The North Carolina Wage and Hour Act at § 95-25.8. limits deductions from employee wages to particular circumstances such as "cash shortages, inventory shortages, or loss or damage to an employer's property" but these deductions are only allowed after giving the employee written notice of the amount to be deducted.

59. Defendant has unlawfully withheld monies from the compensation earned by Plaintiff and the North Carolina Class for business expenses of Defendant, including but not limited to, vehicle expenses, insurance claims, customer charges and communications equipment, in violation of North Carolina law. Plaintiff the members of the North Carolina Class have not expressly and freely given written consent to such deductions and these deductions are not made in response to a valid wage assignment or deduction order.

60. Defendant has withheld these funds unlawfully without providing advance notice to the Plaintiff and members of the North Carolina Class of the amounts, reasons, or documentation to justify such deductions , and absent any lawfully sufficient reason for such conduct.

61. As a direct and proximate result of Defendant's conduct, Plaintiff and members of the North Carolina Class have been deprived of compensation to which they were entitled, and have suffered substantial losses including monetary damage, pre-judgment interest, costs, and reasonable attorneys' fees.

# COUNT IV

## RESCISSION

### (On behalf of named Plaintiff and the North Carolina Class)

62. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

63. Despite any contractual terms characterizing the Distributors as Independent Contractors, the relationship of the Plaintiff and Class Members with Defendant satisfies the test for employment, and not independent contractor status. Plaintiff and members of the North Carolina Class therefore are wrongly classified as independent contractors.

64. As a result of their misclassification, the Distributors must pay substantial sums of their own money for work-related expenses, including but not limited to, the purchase or lease of vehicles meeting Company specifications, and all costs of operating, insuring and maintaining those vehicles.

65. The misclassification of the Distributors in the Agreement illegally and unfairly advantages Defendant, allowing it, among other things, to evade employment-related obligations, such as social security contributions, workers' compensation coverage, and state disability and unemployment compensation as well as to illegally shift business expenses and the expense of workers' compensation coverage and other expenses to the Plaintiff and members of the North Carolina Class.

66. Any Agreement between Defendant and each Plaintiff and Class Member is void as against public policy and therefore unenforceable. These Agreements fail to recognize the employment status of the Plaintiff and the Class Members, and wrongfully deny them the legally cognizable benefits of employment.

67. The Agreement between Defendant and each Plaintiff and Class Member is an unconscionable contract of adhesion, which is unenforceable as contrary to the public interest, policy and law.

68. As a direct and proximate result of Defendant's conduct, Defendant has received substantial benefits to which it had no entitlement, at the expense of the Plaintiff and Class Members, including lost profits, self-employment taxes, premiums for insurance to replace workers' compensation and disability benefits, business expenses, compensation of replacement workers, and other expenses.

69. Plaintiff and Class Members are entitled to rescission of any Agreement, and compensation for all of the business expenses they were illegally required by Defendant to bear, for all of the employment taxes, unemployment compensation and workers' compensation the Defendant should have but did not pay, and Plaintiff and Class Members are entitled to the *quantum meruit* value of their services as employees.

## COUNT V

## UNJUST ENRICHMENT

**(On behalf of named Plaintiff and the North Carolina Class)**

70. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding Paragraphs.

71. Plaintiff and the members of the North Carolina Class are actually employees of Defendant, not independent contractors.

72. Plaintiff and members of the North Carolina Class were required to pay operating expenses detailed in this Complaint which were properly the expenses of Defendant.

73. Defendant was unjustly enriched by requiring Plaintiff and the members of the North Carolina Class to pay their operating expenses.

74. Because the alleged contracts between Plaintiff and members of the North Carolina Class and Defendant are void as against public policy and constitute contracts of adhesion, the work-related dealings between the Plaintiff, the North Carolina class and Defendant are not subject to a contract.

75. The performance of work activities and payment of business expenses as described in this Complaint convey a benefit to Defendant, which it has knowingly received.

76. Defendant is not entitled to this benefit, and retaining it without paying for it would be unjust to Plaintiff and the other members of the North Carolina Class.

77. Consequently, Plaintiff and the members of the North Carolina Class are entitled to recover the reasonable value of the benefits conveyed to Defendant by the performance of the work activities as described in this Complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests of this Court the following relief on behalf of himself, all members of the Class and all others similarly situated individuals:

    a. An Order certifying the Federal Collective Group and the North Carolina Class, appointing Plaintiff as Class Representative, and appointing the undersigned counsel of record as Class Counsel;

    b. An Order for declaratory and injunctive relief designating the Plaintiff and members of the Federal Collective Group and North Carolina Class as employees and enjoining Defendants from pursuing the illegal policies, acts and practices described in this Complaint;

c. An Order declaring the Defendant's conduct as willful, not in good faith and not based on reasonable grounds;

d. An Order requiring Defendants to compensate Plaintiff and the other members of the Class for the reasonable value of the benefits provided to Defendants;

e. Reimbursement of the expenditures, costs, benefits and losses described in this Complaint,

f. Reimbursement of unpaid wages at overtime rates for all overtime work as described in this Complaint;

g. Payment of any penalties or other amounts under any applicable laws, statutes or regulations, including but not limited to liquidated damages;

h. Judgment in favor of each Class member for damages suffered as a result of the conduct alleged herein, to include pre-judgment interest;

i. Award Plaintiff reasonable attorneys' fees and costs;

j. Award Plaintiff and the other members of the Class punitive damages in an amount to be determined at trial; and

k. Grant such other and further legal and equitable relief as this Court deems just and necessary.

## JURY DEMAND

Plaintiff, on behalf of himself and members of the Class, hereby demand a trial by jury on all issues so triable.

This the 11th day of May, 2011.

**[SIGNATURE ON FOLLOWING PAGE]**

**JAMES, McELROY & DIEHL, P.A.**

/s/ John R. Buric
John R. Buric, N.C. Bar No.: 22688
600 South College Street, Suite 3000
Charlotte, North Carolina 28202
Telephone: (704) 372-9870
Facsimile: (704) 333-5508
Email: jburic@jmdlaw.com
*Attorney for Plaintiff*