**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO: 3:11-CV-234-MOC-DSC**

| | |
|---|---|
| **MICHAEL TROCHE, individually and on behalf of all similarly situated individuals,** | ) |
| **Plaintiffs,** | ) |
| **v.** | ) |
| **BIMBO FOODS BAKERIES DISTRIBUTION, INC., f/k/a GEORGE WESTON BAKERIES DISTRIBUTION, INC., a Delaware corporation,** | ) |
| **Defendant.** | ) |

**MEMORANDUM AND RECOMMENDATION**

**THIS MATTER** is before the Court on "Defendant Bimbo Foods Bakeries Distribution, Inc.'s ("Defendant" or "BFBD") Motion to Dismiss Counts I through VII of Plaintiff's Amended Complaint" (document #36) filed November 11, 2013, and the parties' briefs and exhibits. See documents ##36-1, 39 and 40.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and this Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that the Motion to Dismiss be denied, as discussed below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a distributor of Defendant's bakery products in North Carolina. On May 11, 2011, he filed suit, individually and on behalf of other parties, alleging violations of the federal

Fair Labor Standards Act ("FLSA") as well as various state law claims. On December 5, 2011, this Court, citing the principles of comity, transferred the case to the Eastern District of Pennsylvania where substantially similar litigation was pending. On May 24, 2013, the Eastern District of Pennsylvania dismissed Plaintiff's claim under the FLSA thereby eliminating the primary basis for the transfer of the case to that district. With agreement of the parties, the case was transferred back to this Court. Doc. 22.

On October 23, 2013, the parties entered a Stipulation agreeing to the filing of Plaintiff's Amended Complaint without Defendant waiving any defenses. Doc. 34. That same day, Plaintiff, on behalf of himself and other similarly situated individuals, filed the Amended Class Action Complaint. Doc. 35.

Accepting the factual allegations of the Amended Complaint ("the Complaint") as true, Defendant contracts with individuals to distribute bakery products in North Carolina under its trade name and trademarks. The brands consist of products available from Bimbo Foods, including Arnold, August Bros., Anzio & Sons, Bimbo, Boboli, Brownberry, Entenmann's, Francisco, Savoni, and Thomas. Plaintiff and members of the Class have contracted with Defendant to distribute bakery products purchased from Defendant to various outlets within a defined area. That contract is typically memorialized in a document called an Independent Distributor Agreement or Distribution Agreement ("Distributor Agreement"). Plaintiff has been a distributor for Defendant in North Carolina since May 2007.

The Distributor Agreement states in § 2.3 that "the parties intend to create an independent contractor relationship and it is of the essence of this agreement that Distributor be an independent contractor for all purposes . . ." The Agreement further states in § 2.3 that "[a]s an independent contractor, DISTRIBUTOR has the right to operate the business as DISTRIBUTOR

chooses, and shall bear all risks and costs of operating such business." Doc. 35. The Distributor Agreement also states in §5.2 that "[i]n order to enable DISTRIBUTOR to pursue business opportunities with Chains, which may require standard terms for all DISTRIBUTORS, DISTRIBUTOR hereby designates [Defendant][1] and its affiliates and [Defendant] hereby agrees to act, as DISTRIBUTOR's agent." Id.

Plaintiff alleges eight claims against Defendant. Plaintiff styles Counts I through V as "breach of contract" claims. He alleges that Defendant breached the Distributor's Agreement by (1) interfering with Plaintiff's right to function as an independent contractor, (2) unilaterally controlling Plaintiff's profits, (3) negotiating promotional arrangements that required Plaintiff's participation (4) imposing the "shrink cost" on Plaintiff, and (5) promoting a newly acquired Sara Lee product line that is in direct competition with the products Plaintiff distributes. Doc. 35 at ¶¶ 78-106. Count VI alleges that Defendant breached a fiduciary duty to Plaintiff based upon this same conduct as well as its failure to provide adequate information about calculating the Distributors' settlement amounts. Id. at ¶¶ 107-113. Count VII alleges that Defendant's violation of its duties as agent and fiduciary constitutes an unfair act in violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §§ 75-1.1 et seq. Id. ¶¶ 114-120. Finally, Count VIII alleges a violation of the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1 et seq.

On November 11, 2013, Defendant filed its Motion to Dismiss Counts I through VII of Plaintiff's Amended Complaint. Defendant contends that Plaintiff has failed to adequately plead facts to support a plausible claim for a breach of fiduciary duty or for a violation of the UDTPA.

1 Plaintiff's Agreement originated with George Weston Bakeries Distribution Inc. ("GWBD") which changed its name to Bimbo Foods Bakeries Distribution Inc. ("BFBD") effective January 1, 2010. Plaintiff's Agreement references GWBD instead of BFBD.

Defendant also contends that the five breach of contract claims should be dismissed for failure to state plausible claims for relief based on the clear and unambiguous language of the Distribution Agreement.

In his Response, Doc. 39, Plaintiff argues that he has asserted sufficient facts to support his claims for breach of fiduciary duty, violation of the UDTPA, and breach of contract and that Defendant's Motion should be denied.

Defendant's Motion has been fully briefed and is ripe for determination.

## II. DISCUSSION

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id.

**B. Breach of Fiduciary Duty Claim-Count VI**

North Carolina generally recognizes two types of fiduciary relationships: (1) "those that arise from legal relationships such as attorney and client ... partners, principal and agent ... and (2) those that exist as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other." S.N.R. Mgmt. Corp. v. Danube Partners 141 LLC, 659 S.E.2d 442, 451 (2008) (quoting Rhone–Poulenc Agro S.A. v. Monsanto Co., 73 F.Supp.2d 540,

546 (M.D.N.C.1999)). In cases where the parties' relationship is based in contract following arms-length bargaining, North Carolina courts will find that a fiduciary relationship exists only "when one party figuratively holds all the cards—all the financial power or technical information." Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 348 (4th Cir.1998).

Plaintiff alleges in the Amended Complaint that a fiduciary relationship exists between the parties based upon agency. Under § 5.2 of the Distributor Agreement, Defendant is expressly designated as the agent for the Distributors in dealing with chain stores. See Doc. 35-1 at 9. Plaintiff alleges that as a result of this agency relationship, Defendant has a fiduciary duty to the Distributors to act in their best interests and with good faith, due care and loyalty. Plaintiff alleges that Defendant breached this fiduciary duty by depriving him of the ability to determine or control his profits; by negotiating terms that are unreasonable and forfeit Distributors' profits to the chain stores and to itself; by promoting Sara Lee products in direct competition with the products distributed by Plaintiff; and by failing to provide sufficient information about its calculation of the Distributors' settlement amounts.

Defendant, citing to Broussard, asserts that there is no fiduciary relationship between the parties. Defendant argues that parties to a contract are generally not fiduciaries and owe no special duty to one another beyond the terms of the contract and the duties set forth in the Uniform Commercial Code. Doc. 36-1 at 11. Defendant also points out that § 2.3 of the Distributor Agreement states at that "[n]o fiduciary relationship exists between the parties."

Considering the factual allegations in the Amended Complaint and allowing all reasonable inferences in Plaintiff's favor, the undersigned finds that Plaintiff has plausibly alleged that Defendant acted as Plaintiff's agent in its dealings with the chain stores.

Furthermore, Plaintiff has plausibly alleged that Defendant has breached a fiduciary duty. While Defendant disputes the truth of these allegations, Plaintiff has plead sufficient facts to withstand dismissal. Therefore, the undersigned respectfully recommends denying Defendant's Motion to Dismiss Plaintiff's breach of fiduciary duty claim.

**C. Unfair and Deceptive Trade Practices Claim-Count VII**

To state a claim under the North Carolina Unfair and Deceptive Trade Practices Act, see N.C. Gen.Stat. § 75-1.1, Plaintiff must show "(1) that the defendant committed an unfair or deceptive act or practice, or an unfair method of competition; (2) in or affecting commerce; (3) which proximately cause[d] actual injury to plaintiff." B&F Slosman v. Sonopress, Inc., 557 S.E.2d 176, 181 (N.C. App. 2001). The Act's "protections extend to businesses in appropriate situations," Dalton v. Camp, 548 S.E.2d 704, 710 (N.C.2001), but the Act does not "apply to all wrongs in a business setting," Id. at 711. "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Walker v. Fleetwood Homes of North Carolina, Inc., 653 S.E.2d 393, 399 (N.C. 2007). In the context of business contracts, "[i]t is well established that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action" under Section 75-1.1. Computer Decisions, Inc. v. Rouse Office Mgmt. of North Carolina, Inc., 477 S.E.2d 262, 266 (N.C. App. 1996). The plaintiff is required to allege some type of egregious or aggravating circumstances before the Act's provisions may take effect. Dalton, 548 S.E.2d at 711.

The North Carolina Court of Appeals has held that

> [A]llegations of fraud or breach of fiduciary duty will support a claim for unfair or deceptive trade practices. HAJMM Co. v. House of Raeford Farms, 94 N.C.App. 1, 14, 379 S.E.2d 868, 876 (1989), aff'd in part and rev'd in part on

> other grounds, 328 N.C. 578, 403 S.E.2d 483 (1991). Here, plaintiffs alleged numerous instances of breach of fiduciary duty by the defendants, and the trial court found that plaintiffs had alleged a valid claim for breach of fiduciary duty. Those allegations support plaintiffs' claim for unfair or deceptive trade practices.

Norman v. Nash Johnson & Sons' Farms, Inc., 537 S.E.2d 248, 266 (N.C. App. 2000).

Accepting the facts in the Amended Complaint as true, they plausible allege more than a breach of contract. Plaintiff alleges wrongful conduct by Defendant that Plaintiff relied upon in entering the Distributor Agreement and maintaining its relationship with Defendant.

Furthermore, the Fourth Circuit has noted that "[w]hat constitutes an unfair or deceptive trade practice is a somewhat nebulous concept," and that North Carolina courts consider the particular circumstances of each case. Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, 80 F.3d 895, 902 (4th Cir.1996). In determining whether particular conduct violates the UDTPA, "[e]ither unfairness or deception can bring conduct within the purview of the statute; an act need not be both unfair and deceptive." Id. at 903 (citing Rucker v. Huffman, 99 N.C.App. 137, 392 S.E.2d 419, 421 (1990)). "Thus, whether a particular practice violates the [UDTPA] is both a question of law and a highly fact-specific inquiry." South Atl. Ltd. P'ship of Tenn., LP v. Riese, 284 F.3d 518, 535 (4th Cir. 2002).

Consequently, the undersigned concludes that a fact specific inquiry as to violations of the UDTPA is best left for summary judgment. At this early stage, the undersigned cannot find that Defendant's course of conduct is not sufficiently egregious so as to violate N.C. Gen. Stat. § 75–1.1. Therefore, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiff's UDTPA claim be denied.

**D. Breach of Contract Claims-Counts I-V**

Under North Carolina law, "[t]he elements of a claim for breach of contract are (1)

existence of a valid contract and (2) breach of the terms of that contract." Parker v. Glosson, 232, 641 S.E.2d 735, 737 (N.C. App. 2007) (internal quotations omitted). Formation of a valid contract requires "an agreement to which at least two parties manifest an intent to be bound." Id.

In Count I, Plaintiff alleges that Defendant has breached §2.3 of the Distributor Agreement by failing to treat him as an independent contractor and by interfering with his right to operate his distributorship. Defendant argues that it is merely fulfilling the duties that are expressly delegated to it under the Distributor Agreement.

In Count II, Plaintiff alleges that Defendant has breached §§ 2.3, 3.3 and 5.2 of the Distributor Agreement by failing to set terms and prices reasonably in negotiating with chain stores and by not acting in Plaintiff's best interests. Defendant argues that it negotiates with chain stores pursuant to the Distributor Agreement, and that Plaintiff has not alleged sufficient facts to support a claim that it breached its duties under the Agreement.

In Count III, Plaintiff alleges that Defendant has breached §§ 3.2, 3.3 and 5.2 of the Distributor Agreement by requiring distributors to participate in promotions that unreasonably deprive them of profits and fail to properly credit them for damaged or stale products sold to chain stores. Defendant argues that the Distributor Agreement expressly delegates to those decisions to it. Defendant also argues that Plaintiff has not shown that it failed to allow full credit for products returned in accordance with the stale and damaged returns policy.

In Count IV, Plaintiff alleges that when Defendant agreed to a scan-based trading ("SBT") arrangement with certain customers, it failed to negotiate reasonable terms for the handling of "shrink" in violation of §§ 3.3 and 5.2 of the Distributor Agreement. Defendant argues that Plaintiff does not allege that any of the customers with SBT arrangements would have been willing to forgo it and that Plaintiff's mere speculation is insufficient to withstand

dismissal.

In Count V, Plaintiff alleges that Defendant was acting as his agent and was obligated under §5.2 of the Distributor Agreement to act in the best interests of the distributors in negotiating pricing and terms with the chain stores. As their agent and fiduciary, Plaintiff asserts that Defendant was obligated to place the distributors' interests above any interest it may have in promoting competing Sara Lee products.

The Court finds that the Amended Complaint has sufficiently alleged the five breach of contract claims under North Carolina law. Plaintiff alleges: 1) the existence of a valid contract, the Distributor Agreement; and 2) the breach of various terms under that Agreement. Factual disputes remain for resolution at a later time. The undersigned does not evaluate the merits of Plaintiff's claims here. At this stage, Plaintiff has alleged sufficient facts to state a claim for relief that is plausible on its face as required by Iqbal and Twombly. Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiff's breach of contract claims be denied.

## III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendant Bimbo Foods Bakeries Distribution, Inc.'s Motion to Dismiss Counts I through VII of Plaintiff's Amended Complaint" (document #36) be **DENIED**.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same.

Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Max O. Cogburn, Jr.

**SO RECOMMENDED.**

Signed: March 11, 2014

David S. Cayer
United States Magistrate Judge