| | |
|---|---|
| **MICHAEL TROCHE, individually and** | ) |
| **on behalf of all similarly situated** | ) |
| **individuals,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) **ORDER** |
| **v.** | ) |
| | ) |
| **BIMBO FOODS BAKERIES** | ) |
| **DISTRIBUTION, INC., f/k/a GEORGE** | ) |
| **WESTON BAKERIES DISTRIBUTION,** | ) |
| **INC., a Delaware corporation,** | ) |
| | ) |
| **Defendant.** | ) |

THIS MATTER comes before the Court on Defendant's Motion To Dismiss, (Doc. 36),

and the Magistrate Judge's Memorandum and Recommendation (M&R), (Doc. 48),

recommending that this Court deny Defendant's Motion. Defendant filed objections to the M&R,

and the parties have briefed the relevant issues extensively. (Docs. 48-52). This matter is ripe for

review.

## I.    BACKGROUND

Plaintiff and the members of the Class formed agreements with Defendant Bimbo Foods

Bakeries Distribution (BFBD) to distribute bakery products purchased from Defendant to various

stores within areas specified by the agreements. The products included a variety of well-

established brands available from BFBD. (Doc. 35: Amended Complaint ¶20). In May 2007,

Plaintiff Troche entered into one such contract, or "Distribution Agreement," (Agreement) with

BFBD, then known as George Westin Bakeries Distribution, Inc. (Docs. 35 ¶5; 35-1).

The Agreement contemplates that Plaintiff would purchase products from BFBD at a

certain price and then re-sell them to various customers at a higher price, thereby earning a profit on the difference. (Doc. 35 ¶30). Plaintiffs allege that the common practice was for them to pick up the products from one of BFBD's facilities and deliver them to various stores in their specified area. (Doc. 35 ¶29). As part of the Agreement, Plaintiffs were also responsible for maintaining adequate supplies in the stores, rotating product, and removing stale or damaged product. (Id.; 35-1 §4.1).

The Agreement identifies Plaintiffs as "distributors" and "independent contractors" and expressly states that "[n]o fiduciary relationship exists between the parties." (Docs. 35 ¶28; 35-1 §2.3). This provision notwithstanding, Plaintiffs allege that BFBD's managers routinely exerted supervisory and disciplinary control over Plaintiffs. (Doc. 35 ¶33). The crux of Plaintiffs' complaint involves allegations of interference by BFBD with the relationship between Plaintiffs and their customers, including contacting store members about matters related to Plaintiffs' business, and determining which products Plaintiffs could distribute to various stores. Plaintiffs also allege that BFBD negotiated promotions with Plaintiffs' customers that imposed burdens on Plaintiffs and squeezed their margins of profit. (Id. ¶42).

In 2011, BFBD acquired a bakery division of Sara Lee and began promoting products that competed directly in the marketplace with those distributed by Plaintiffs. Plaintiffs allege several adverse consequences including decreased shelf space and loss of sales as a result of Defendant's promotion of Sara Lee products.

Plaintiffs filed suit in this district in 2011 alleging violations of the federal Fair Labor Standards Act (FLSA) as well as various state law claims. Since then, the case has migrated to and from federal court in Pennsylvania where the FLSA claim was dismissed. The remaining claims are for breach of contract (Counts I-V), breach of fiduciary duty (Count VI), unfair and

deceptive trade practices (UDTPA) (Count VII), and violations of the North Carolina Wage and Hour Act (Count VIII).  Defendants moved under Rule 12(b)(6) to dismiss Counts I-VII.  (Doc. 36).  On March 12, 2014 the Magistrate Judge issued an M&R recommending that this Court deny Defendant's motion.  On March 21, 2014, BFBD objected to the M&R; specifically Defendant contends that no fiduciary relationship existed between the parties and that Plaintiff has not alleged "substantial aggravating factors" sufficient to support a claim for unfair and deceptive trade practices.  The Court reviews Defendant's objections de novo.

## II.      STANDARD OF REVIEW

The district court may assign dispositive pretrial matters pending before the court to a magistrate judge for "proposed findings of fact and recommendations."  28 U.S.C. § 636(b)(1)(B).  The Federal Magistrate Act provides that "a district court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made."  Id. at § 636(b)(1)(C); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).  However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with."  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  Similarly, de novo review is not required by the statute "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations."  Id.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting FED. R. CIV. P. 72 advisory committee's note).

In its review of a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."  Mylan Labs

Inc. v. Matakari, 7 F.3d 1130, 1134 (4th Cir. 1993). But the court need not accept allegations that "contradict matters properly subject to judicial notice or exhibit." Blankenship v. Manchin, 471 F.3d 523, 529 (4th Cir. 2006). A plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Thus, the applicable test on a motion for judgment on the pleadings is whether, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law. Alexander, 801 F. Supp. 2d at 433.

## III. DISCUSSION

Defendants lodged two main objections which are reviewed de novo. Defendants contend that no fiduciary duty existed between the parties, and that Plaintiff has not alleged "substantial aggravating circumstances" sufficient to support a claim for unfair and deceptive trade practices. (Doc. 49 at 10).

### A. Fiduciary Duties

North Carolina courts have resisted providing an exhaustive definition of what constitutes a fiduciary relationship. As a result, the analysis of whether Plaintiff has alleged a breach of fiduciary duty between the parties presents a challenging inquiry that resists simple formulation.

Viewed in light of a 12(b)(6) motion, this inquiry engages federal pleading standards, the interpretation of state and federal case law, the Uniform Commercial Code (UCC), North Carolina statutory and common law, Plaintiff's complaint, and the relevant agreement between the parties.

Perhaps anticipating this predicament, Defendant offers an easy solution to this Court by pointing to language in the Agreement whereby the parties disclaimed a fiduciary relationship. (Doc. 35-1: §2.3). Maintaining that the Agreement is governed by the UCC, which displaces common law fiduciary duties and allows parties to disclaim such relationships, Defendant moves this Court to find, as a matter of law, that no fiduciary relationship existed, a condition precedent for a breach of fiduciary duty. As support, Defendant cites to Broussard v. Meineke Discount Muffler Shops, Inc., whereby the Fourth Circuit, quoting the North Carolina Court of Appeals, held that "'parties to a contract do not thereby become each others' fiduciaries; they generally owe no special duty to one another beyond the terms of the contract and the duties set forth in the U.C.C.'" 155 F.3d 331, 347 (4th Cir. 1998) (quoting Branch Banking and Trust Co. v. Thompson, 418 S.E.2d 694, 699 (N.C. App. 1992)). The implication of this holding, Defendant maintains, is that fiduciary relationships cannot be formed in contracts governed by the UCC unless such obligations are included in the contract. The parties having disavowed a fiduciary relationship in the contract, Defendant contends that Broussard compels this court to only one conclusion: no such relationship existed sufficient to support Plaintiffs' claims.

Plaintiffs oppose Defendant's assertions at each turn, claiming that it is premature for the court to determine whether the UCC applies at this stage as it is a question of fact; that the UCC does not apply as the Agreement is primarily one for rights and services rather than goods; that the UCC does not displace common law fiduciary duties; and that the Agreement expresses an agency relationship between the parties that establishes the requisite fiduciary relationship to support a

claim for breach of fiduciary duties.

"For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." Dalton v. Camp, 548 S.E.2d 704, 707 (2001). In general, North Carolina recognizes two types of fiduciary relationships: (1) those that arise from legal relationships such as attorney and client, broker and client, principal and agent, and (2) those that exist as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other. Abbitt v. Gregory, 160 S.E. 896, 906 (N.C. 1931) (citing 2 JOHN NORTON POMEROY, EQUITY JURISPRUDENCE § 956 (3d ed., 1905). When the situation does not cleanly fit into a previously defined category, the question of whether a fiduciary relationship exists is a determination for the finder of fact and depends ultimately on the specific facts and circumstances of the case. HAJMM Co. v. House of Raeford Farms, Inc., 403 S.E.2d 483, 489 (N.C. 1991). A fiduciary relationship "can arise in a variety of circumstances . . . and may stem from varied and unpredictable factors." Id. (citation omitted).

1.    UCC

The scope of (Article 2 of) the UCC is limited to "transactions in goods" and does not apply to contracts for the provision or services. N.C. GEN. STAT. § 25-2-102. In evaluating the applicability of the UCC to mixed contracts, North Carolina courts look to the "predominant factor" of the contract. See Hensley v. Ray's Motor Co. of Forest City, Inc., 580 S.E.2d 721, 724 (N.C. App. 2003). The UCC applies where the sale of goods predominates over the provision of services; where the sale of goods is merely incidental to the rendition of service, the UCC does not apply.

Defendants request that this Court find, as a matter of law, that the Agreement is predominantly one for goods and that the UCC applies. This finding, however, would be

premature as to make this determination would require at least some consideration of facts beyond which a court may consider at this stage.  At the 12(b)(6) stage, courts are prohibited from considering materials extrinsic to the complaint and exhibits such as contracts expressly referred to and integral to the complaint. See FED. R. CIV. P. 12(d); Blankenship v. Manchin, 471 F.3d 523, 525 n.1. (4th Cir. 2006).  Plaintiff has alleged – and the Court accepts as true – that the parties performed a wide range of services under the contract.  While the Agreement in question evinces a transaction for goods, it is not sufficiently clear on its face – in light of Plaintiffs' allegations – for the Court to dispose of the question as a matter of law.  This conclusion squares with the practice of other courts, which have resolved the issue at summary judgment or on appeal. See Coakley & Williams, Inc. v. Shatterproof Glass Corp., 706 F.2d 456, 461 (4th Cir. 1983) (finding the determination of whether the UCC applied to a mixed contract to be premature at the 12(b)(6) or demurrer stage).

Regardless of whether the UCC applies, Plaintiff swims against a strong current of North Carolina law in alleging a fiduciary relationship between two business entities dealing at arms-length. Discussing the long-settled aversion to recognizing fiduciary relationships among contracting businesses, the North Carolina Court of Appeals held in Tin Originals, Inc. v. Colonial Tin Works, Inc., that, absent "special circumstances" causing one party to have "superiority and influence" over the other, no fiduciary relationship can exist between mutually interdependent businesses with equal bargaining power who dealt at arms-length. 391 S.E.2d 831 (N.C. App. 1990).

Nonetheless, while such relationships are rare, no court has gone so far as to say that a fiduciary relationship cannot exist among business entities.  The issue at this stage is to determine whether, in light of the lofty standard for proving such claims, Plaintiff has alleged sufficient facts

to "raise the right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555. The Court concludes that Plaintiffs have. Plaintiffs have alleged that managers and agents for BFBD monitored and controlled the distributors (Doc. 35 ¶33), exerted supervisory or disciplinary authority (<u>Id.</u>), dictated and controlled the work of Plaintiffs and distributors in many ways (<u>Id.</u> ¶34), contacted store managers about matters related to distributors' business (<u>Id.</u>), negotiated with stores directly (<u>Id.</u> ¶45), and imposed promotional pricing on distributors which controls their profit margins (<u>Id.</u>). Finally, Plaintiffs allege that, by using the term "agent," the contract itself evinces a fiduciary relationship. (Doc. 35-1 §§5.2, 11.6).

Whether or not Plaintiffs will be able to prove "special circumstances" is not a question before the Court at present; it suffices for now that they have stated a valid claim for a breach of fiduciary duty. Accordingly, the Court **denies** Defendant's motion to dismiss under Rule 12(b)(6).

B. UDTPA Claim

 "[A]llegations of breach of fiduciary duty will support a claim for unfair or deceptive trade practices." <u>Norman v. Nash Johnson & Sons' Farms, Inc.</u>, 537 S.E.2d 248, 266 (N.C. App. 2000) (citing <u>HAJMM Co. v. House of Raeford Farms</u>, 379 S.E.2d 868, 876 (1989)). Having found that Plaintiffs have stated a claim for breach of fiduciary duty, the Court declines to dismiss Plaintiff's claim for unfair and deceptive trade practices.

IV. **CONCLUSION**

**IT IS SO ORDERED** that:

The Court adopts the recommendations of the Magistrate Judge (Doc. 48) in whole and **denies** Defendant's Motion to Dismiss (Doc. 36).


Signed: April 28, 2014

Robert J. Conrad, Jr.
United States District Judge