UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cv-234-RJC-DSC

| | |
|---|---|
| MICHAEL TROCHE, individually and on behalf of all similarly situated individuals, </br></br> Plaintiff, </br></br> v. </br></br> BIMBO FOODS BAKERIES DISTRIBUTION, INC., f/k/a GEORGE WESTON BAKERIES DISTRIBUTION, INC., a Delaware corporation, </br></br> Defendant. | **ORDER** |

**THIS MATTER** comes before the Court on Plaintiff's Amended Complaint, (Doc. No. 35); Defendant's Motion for Summary Judgment, (Doc. No. 75), and supporting brief, (Doc. No. 75-3); and Plaintiff's Memorandum in Opposition, (Doc. No. 94). These matters are ripe for review.

**I.     BACKGROUND**

In 2007, Plaintiff formed an Agreement with Defendant Bimbo Foods Bakeries Distribution (BFBD) which gave Plaintiff exclusive rights to sell certain BFBD products to customers in a defined geographic area in North Carolina. (Doc. No. 35 at ¶¶ 4, 22). The Agreement, (Doc. No. 35-1), governed the terms and conditions of Plaintiff's purchase of product from BFBD and their business relationship. The products included a variety of well-established brands available from BFBD. (Doc. No. 35 at ¶ 20).

1

The Agreement contemplates that Plaintiff would purchase products from BFBD at a certain price and then re-sell them to various customers at a higher price, earning a profit on the difference. (Doc. No. 35 at ¶ 30); see also (Doc. No. 75-3 at 8). Plaintiff alleges that the common practice was for IOs to pick up the products from one of BFBD's facilities and deliver them to various stores in their specified area. (Doc. No. 35 at ¶ 29). Under the Agreement, the Plaintiff was also responsible for maintaining adequate supplies in the stores, rotating product, and removing stale or damaged product. (Doc. No. 35-1 at § 4.1).

The Agreement establishes that Plaintiff is an independent contractor, or Independent Operator ("IO"), and expressly states that "[n]o fiduciary relationship exists between the parties." (Id. at § 2.3). This provision notwithstanding, Plaintiff alleges that BFBD's managers routinely exerted supervisory and disciplinary control over Plaintiff and other IOs. (Doc. No. 35 at ¶ 33). The crux of Plaintiff's complaint involves allegations of interference by BFBD with the relationship between the IOs and their customers, including contacting store members about matters related to the IOs' businesses, and determining which products the IOs could distribute to various stores. See (id. at ¶¶ 33, 34, 79). Plaintiff also alleges that BFBD unreasonably controlled the IOs' profits through its representation of the IOs in negotiations with chain stores, (Id. at ¶¶ 42, 44, 84), through its negotiations of promotions with the IOs' customers, (Id. at ¶¶ 52, 90), and by allowing chain stores to use Scan-Based Trading ("SBT"), which imposes the cost of shrink onto IOs. (Id. at ¶¶ 59, 96).

In 2011, BFBD acquired a bakery division of Sara Lee and began promoting products that competed directly in the marketplace with those distributed by Plaintiff and other IOs. (Doc. No. 35 at ¶ 64). Plaintiff alleges several adverse consequences as a result of Defendant's promotion of Sara Lee products, including decreased shelf space and loss of sales. (Doc. No. 35

at ¶¶ 66, 102).

Plaintiff filed suit in this district on May 11, 2011, alleging violations of the federal Fair Labor Standards Act (FLSA) as well as various state law claims. (Doc. No. 1). Since then, the case was transferred to and from federal court in Pennsylvania where the FLSA claim was dismissed. (Doc. Nos. 21, 22). Plaintiff filed an Amended Complaint on October 23, 2013, with the remaining claims for breach of contract (Counts I-V), breach of fiduciary duty (Count VI), unfair and deceptive trade practices (UDTPA) (Count VII), and violations of the North Carolina Wage and Hour Act (NCWHA) (Count VIII). (Doc. No. 35). On July 18, 2014, Defendant filed a Motion for Summary Judgment, (Doc. No. 75). On June 1, 2015, the Court held a hearing on this motion and Plaintiff's Motion for Class Certification, (Doc. No. 58). See (Doc. No. 109).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the moving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving

party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal citations omitted). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249-50.

## III. DISCUSSION

### A. Count I

Count I of the Amended Complaint alleges that Defendant breached the Agreement by failing to treat the Plaintiff as an independent contractor, and by interfering with his right to operate his distributor business as he chooses. (Doc. No. 35 at ¶ 79). Defendant argues for summary judgment on this count because: (1) the requested injunctive relief is vague and indeterminate in length; (2) the Agreement does not grant Plaintiff the broad right to operate his business any way he wishes regardless of the rights and obligations under the Agreement; and (3) no factfinder could reasonably conclude that BFBD materially breached any of the rights or obligations in the Agreement. (Doc. No. 75-3 at 13).

In response to the second and third offered reasons for summary judgment Plaintiff argues that his right to operate his business as an independent contractor is an enforceable term of the contract, and that a reasonable factfinder could determine that, based on the evidence Plaintiff has offered, BFBD breached its obligation not to interfere with Plaintiff's right. (Doc. No. 94 at 7-9). As to the permissibility of the requested injunctive relief, Plaintiff outlines a proposed injunction, claiming that its terms are neither vague nor indeterminate in length, and are thus appropriate. (Id. at 9-11). These terms establish a variety of procedures which regulate the relationship between BFBD personnel and IOs, including: creating a job description and guidelines which articulates the relationship; providing IOs an annual opportunity to offer formal feedback about their interactions with sales managers; establishing protocol for sales managers' visits to stores in IO sales areas, and a policy limiting the number of unannounced visits; publishing a guideline to clarify what constitutes a breach of contract; and requiring BFBD to conduct an interview with an IO before issuing a breach letter. (Id. at 10). Plaintiff states that a burden on the Court can be avoided by using a third party to monitor the requirements, with only an annual report to the Court for a term of three years. (Id.)

An injunction which seeks to prevent breaches of contract is often a negative enforcement of specific performance. United Cigarette Mach. Co. v. Winston Cigarette Mach. Co., 194 F.947, 958 (4th Cir. 1912). Under North Carolina law, such an injunction will generally "not be issued to restrain a breach of a long term contract," id., because the Court "will not often grant specific performance where by doing so it is placed in the position of constantly supervising performance." Munchak Corp. (Delaware) v. Caldwell, 265 S.E.2d 654, 661 (N.C. Ct. App. 1980). Furthermore, "[e]ven if a breach of a valid contract exists, 'specific performance will not be decreed unless the terms of the contract are so definite and certain that the acts to be

performed can be ascertained and the court can determine whether or not the performance rendered is in accord with the contractual duty assumed.'" McKinnon v. CV Industries, Inc., 713 S.E.2d 495, 500 (N.C. Ct. App. 2011) (citing N.C. Med. Soc'y v. N.C. Bd. Of Nursing, 610 S.E.2d 722, 727 (N.C. Ct. App. 2005). A court will not "make a new or different contract for the parties simply because the one made by the parties proves ineffectual." Munchak, 265 S.E.2d at 661 (citing McLean v. Keith, 72 S.E.2d 44, 53 (N.C. 1952)).

Plaintiff's proposed terms do not make injunctive relief appropriate in this case. The contract term he seeks to enforce is not definite enough "that the acts to be performed can be ascertained," McKinnon, 713 S.E.2d at 500, and the proposed details establishing policies for the relationships between BFBD personnel and IOs are arguably modified or entirely new contract terms. While Plaintiff has suggested a period of only three years for Court supervision, there is no basis for that particular amount of time, see (Doc. No. 94 at 10), and as the contract is "without a time limit," it is likely that its "performance would be continuous and would require protracted supervision and direction." United Cigarette, 194 F. at 958. Because Plaintiff has requested only vague and indeterminate injunctive relief, Defendant's motion for summary judgment is appropriate as to Count I of the Amended Complaint.

B. Counts II-V

Counts II through V of the Amended Complaint allege further breaches of contract by the Defendant. Count II states that the Defendant unilaterally and unreasonably controlled the profits of the Plaintiff by requiring him to "participate in pricing and promotional programs with chain stores that do not reasonably increase [his] profits." (Doc. No. 35 at ¶ 84). Count III further alleges that Defendant breached its contract with Plaintiff by requiring him to participate in promotions that unreasonably deprive him of profits, and by failing "to properly credit him for

6

damaged or stale product sold to a chain and then returned after the promotion period ends." (Id. at ¶ 90). Count IV alleges that Defendant breached its contract "[b]y imposing the shrink cost on Plaintiff." (Id. at ¶ 96). Finally, in Count V, Plaintiff claims that "Defendant's promotion of Sara Lee products in direct competition with the products distributed by Plaintiff…constitutes a breach of the Distributor Agreement." (Id. at ¶ 102).

Defendant argues that Counts II through V warrant summary judgment because the contract terms allegedly breached are not found in the plain language of the contract and the contract indisputably permits the challenged conduct. (Doc. No. 75-3 at 12). Although the Plaintiff does concede in his testimony that the Agreement does not expressly forbid the conduct, (Doc. Nos. 88-6 at 24, 88-7 at 3), and that he is unaware of BFBD's communications with chain stores, (Doc. No. 88-6 at 20), he argues that the Defendant has breached his contractual duty to act reasonably in each instance. (Doc. No. 94 at 11, 17, 20, 22). Plaintiff notes that under North Carolina law, "[w]here a contract confers on one party a discretionary power affecting the rights of the other, this discretion must be exercised in a reasonable manner based upon good faith and fair play." Mezzanotte v. Freeland, 200 S.E.2d 410, 414 (N.C. Ct. App. 1973), *cert. denied*, 201 S.E.2d 689 (N.C. 1974). "Reasonableness is a question of fact, generally to be decided by a jury." MCI Constructors, Inc. v. Hazen and Sawyer, P.C., 401 F. Supp.2d 504, 510 (M.D.N.C. 2005). Because there is clearly a dispute as to whether or not Defendant's conduct was reasonable, a triable issue of fact exists for Counts II through V, and summary judgment is inappropriate.

Defendant argues that Count II should be summarily dismissed because: Plaintiff specifically delegated to BFBD the right to negotiate with customers on his behalf, and has not revoked that delegation of authority; Plaintiff has no knowledge of BFBD's communication with

7

chain customers, and cannot point to evidence of who makes decisions on pricing; and Plaintiff cannot dispute the contention that the customers ultimately decide the terms that they require. (Doc. No. 75-3 at 20). Plaintiff responds that the discretionary element in setting pricing, as provided for in the Agreement, (Doc. No. 35-1 at § 3.3), is closely tied with sections 2.3 and 5.2 of the Agreement, and therefore requires that the Defendant act reasonably in its negotiations with chain stores. (Doc. No. 94 at 12). Plaintiff also cites testimony from account executives discussing the process of negotiations, raising a question of fact as to the extent of chain customer control over setting prices. (Id. at 12-13).

Similarly, on Count III, Defendant argues that Plaintiff's claim cannot survive summary judgment because Plaintiff delegated to BFBD the right to negotiate promotions, customers ultimately made final decisions about promotions, and nothing in the Agreement guaranteed Plaintiff a particular income or profit level. (Doc. No. 75-3 at 21). Plaintiff raises a triable issue of fact through his assertions about BFBD's requirements for selling products to stores at promotional price before the promotion begins, and for refunding the stores at full price even when the products were initially purchased at promotional price. (Doc. No. 94 at 17). Defendant does not address this contention in its Memorandum in Support of Summary Judgment, instead simply arguing that Plaintiff's claims of unreasonable pricing and promotions lack merit. (Doc. No. 75-3 at 22). Defendant's discretionary power to set pricing and negotiate with chain stores creates a duty to act reasonably, see Mezzanotte, 200 S.E.2d at 414, and a reasonable jury could find that Defendant's conduct with respect to setting pricing and promotions was unreasonable.

Defendant argues that Count IV of Plaintiff's Amended Complaint should be dismissed because Plaintiff admits that he does not know whether customers unilaterally demand scan-based trading and refuse to share in shrink, and because the Agreement does not preclude him

from bearing the cost of shrink. (Doc. No. 75-3 at 22). Plaintiff correctly counters by noting that, even if chain stores had unilaterally demanded scan-based trading and refused to cover any of the cost of shrink, BFBD "could have decided in fairness to cover or share the cost of shrink itself, instead of imposing it on Troche and the other IOs." (Doc. No. 94 at 22). This alternative, combined with Plaintiff's cited BFBD admissions of actual negotiations with chains, see (Doc. No. 93-1 at 33, 35), create a question of fact as to the reasonableness of BFBD's actions concerning scan-based trading and the cost of shrink.

Finally, Defendant argues that Count V of the Amended Complaint should fail as a matter of law because nothing in the Agreement precludes Defendant from promoting or selling competing products in Plaintiff's sales area, and because the Agreement confirms that Plaintiff will not have rights to any products/lines acquired by BFBD after its execution. (Doc. No. 75-3 at 24). Plaintiff contends that a reasonable jury could find that BFBD has a conflict of interest in promoting and selling both Sara Lee products and the products sold by IOs, because "BFBD benefits by sale of either product, giving it no motivation to promote the IOs' competing products or to develop a strategy against Sara Lee as an actual competitor, in violation of its obligation to reasonably assist and cooperate with Troche's sales efforts." (Doc. No. 94 at 23). Plaintiff asserts that Defendant's promotion and sale of Sara Lee products violate Section 5.1 of the agreement, which creates an obligation for BFBD to use "commercially reasonable efforts" to preserve and develop the quality and marketability of the Products and to assist and cooperate with Distributor's sales efforts. (Doc. No. 94 at 22); see (Doc. No. 35-1 at § 5.1). Although the Agreement does expressly contemplate BFBD's acquisition of new products or product lines, (Doc. No. 35-1 at § 11.7), a reasonable jury could find that BFBD's promotion and sale of a directly competing product breached the Agreement with Plaintiff.

Because triable issues of fact exist for Counts II through V of Plaintiff's Amended Complaint, summary judgment is not warranted on those counts.

C. Count VI

Count VI of the Amended Complaint alleges breach of fiduciary duty by the Defendant. (Doc. No. 35 at ¶¶ 108-09). The Defendant argues that "Plaintiff cannot point to evidence of any 'special circumstances' in his ordinary commercial contract with BFBD that would give rise to a fiduciary relationship," and therefore that Plaintiff's Count VI claim must fail as a matter of law. (Doc. No. 75-3 at 24). Plaintiff correctly counters that under North Carolina law, the principal-agent relationship gives rise to a fiduciary duty. (Doc. No. 94 at 24-25); see Vail v. Vail, 63 S.E.2d 202, 206 (N.C. 1951). However, according to the economic loss doctrine, the Plaintiff may not bring a fiduciary duty claim where the duty arises from an underlying contract. Wilkins v. Wachovia Corp., No. 5:10-CV-249, 2011 WL 1134706, at *2 (E.D.N.C. March 24, 2011).

Here, the Plaintiff was unable to describe any differences between his breach of fiduciary duty claim in Count VI and the breach of contract claims in Counts I-V. (Doc. No. 74-1 at 34-35). He also conceded that he was seeking the same relief in the Count VI fiduciary duty claim as in the Counts I-V breach of contract claims. (Doc. No. 74-1 at 42). Plaintiff's Brief in Opposition does not allege any distinction between the breach of fiduciary duty claim and the breach of contract claims. (Doc. No. 94 at 24-26). Because Plaintiff has failed to allege a fiduciary duty that Defendant owed him separate from the Distributor Agreement, Count VI fails as a matter of law. See Wilkins, 2011 WL 1134706, at *2.

D. Count VII

In Count VII of the Amended Complaint, Plaintiff alleges that Defendant's violation of its fiduciary duty (alleged in Count VI) also constitutes an unfair act or practice in violation of

10

N.C. Gen. Stat. § 75-1.1. (Doc. No. 35 at ¶¶ 115-16). In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show that (1) defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff. Becker v. Graber Builders, Inc., 561 S.E.2d 905, 910 (N.C. Ct. App. 2002) (citing Dalton v. Camp, 353 548 S.E.2d 704, 711 (N.C. 2001)). Proof of breach of contract does not constitute proof of an unfair or deceptive act by the Defendant. Id. (citing Branch Banking and Trust Co. v. Thompson, 418 S.E.2d 694, 700, *disc. review denied*, 421 S.E.2d 350 (N.C. 1992)). Rather, "egregious or aggravating circumstances" must be alleged in order to establish that a defendant committed an unfair or deceptive act or practice. Id. at 911 (citing Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989)).

The Plaintiff's UDTPA claim states that Defendant's breach of fiduciary duty "constitutes substantial aggravating circumstances warranting protection under [N.C. Gen. Stat. § 75-1.1]," to the extent that the Defendant's conduct is viewed as stemming from a breach of contract. (Doc. No. 35 at 25). Indeed, North Carolina courts have recognized that "breach of fiduciary duty will support a claim for unfair or deceptive trade practices." Norman v. Nash Johnson & Sons' Farms, Inc., 537 S.E.2d 248, 266 (N.C. Ct. App. 2000) (citing HAJMM Co. v. House of Raeford Farms, 379 S.E.2d 868, 876 (N.C. Ct. App. 1989), *aff'd in part and rev'd in part on other grounds*, 403 S.E.2d 483 (N.C. 1991)). However, as discussed above, Plaintiff's breach of fiduciary duty claim cannot be maintained as it is indistinguishable from his breach of contract claims. See Wilkins, 2011 WL 1134706, at *2. Therefore, the Defendant is correct in its argument that, without substantial aggravating circumstances distinct from alleged breaches of contract, summary judgment is appropriate for Plaintiff's UDTPA claim. (Doc. No. 75-3 at 28); see Becker, 562 S.E.2d at 910.

E. Count VIII

Count VIII of the Amended Complaint alleges that BFBD is treating Plaintiff as an employee through the breaches alleged in Counts I through V. (Doc. No. 35 at ¶ 122). Plaintiff claims that Defendant has "unlawfully withheld monies from the compensation earned by Plaintiff," and seeks protection under the North Carolina Wage and Hour Act at N.C. Gen. Stat. § 95-25.1 *et seq*. (Doc. No. 35 at ¶¶ 125-28). Defendant argues that summary judgment is warranted on this Count because Plaintiff did not receive "wages" as defined by the statute, the challenged expenses are non-wages, and the Plaintiff authorized the challenged expenses.

N.C. Gen. Stat § 95-25.2 defines "wages" as "compensation for labor or services rendered by an employee." Defendant presents a persuasive argument that Plaintiff cannot show the money he received from BFBD was for labor or services rendered. Plaintiff's claim that Troche's compensation was "a percentage proportion of the money derived from the sale of BFBD's fresh bread products in exchange for labor and services" is unconvincing. (Doc. No. 94 at 29). The Amended Complaint provided a detailed explanation of the sale and delivery process between BFBD, the IOs, and the customer stores, explaining that Plaintiff's income will be earned "by buying products from BFBD at one price, selling them to a customer at a higher price and making money on the difference." (Doc. No. 35 at 8). This arrangement takes Plaintiff's earnings out of the statutory definition of "wages."

Under NCWHA regulation 13 N.C.A.C. 12.0301(d), the challenged expenses (for use of handheld equipment) are not computed as wages. The regulation specifically lists "equipment required by the employer" as an item which will not be computed as wages. 13 N.C.A.C. 12.0301(d) (current with rules received through July 9, 2015). Plaintiff argues that because the

regulation says nothing about "expenses related to the operation of equipment," that BFBD's charges for operating the handheld computer are calculated as wages, and therefore deductions related to them fall under the NCWHA. This argument is unpersuasive considering that 12.0301(d) includes a non-exhaustive list, and describes the 'non-wages' as "[i]tems which are primarily for the benefit of the employer," id., as opposed to 'wages' "where there is benefit to the employee and the benefit has been received by the employee." Id. at 12.0301(a). The costs allegedly diverted from Plaintiff's earnings for expenses related to operating the handheld computer are non-wages as a matter of law, therefore the Plaintiff's NCWHA claim cannot survive summary judgment.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment, (Doc. No. 75), is **GRANTED** as to Counts I, VI, VII, and VIII; and

2. Defendant's Motion for Summary Judgment, (Doc. No. 75), is **DENIED** as to Counts II, III, IV, and V.

Signed: August 18, 2015

Robert J. Conrad, Jr.
United States District Judge