UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cv-234-RJC-DSC

| | |
|---|---|
| MICHAEL TROCHE, individually and on behalf of all similarly situated individuals, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) ) |
| BIMBO FOODS BAKERIES DISTRIBUTION, INC., f/k/a GEORGE WESTON BAKERIES DISTRIBUTION, INC., a Delaware corporation, | ) ) ) ) ) ) |
| Defendant. | ) ) |

**ORDER**

**THIS MATTER** comes before the Court on Plaintiff's Amended Complaint, (Doc. No. 35), Plaintiff's Motion to Certify Class, (Doc. No. 58), Plaintiff's Memorandum in Support, (Doc. No. 63), and Defendant's Memorandum in Opposition, (Doc. No. 89). These matters are ripe for review.

**I.   BACKGROUND**

In 2007, Plaintiff formed an Agreement with Defendant Bimbo Foods Bakeries Distribution (BFBD) which gave Plaintiff exclusive rights to sell certain BFBD products to customers in a defined geographic area in North Carolina. (Doc. No. 35 at ¶¶ 4, 22). The Agreement, (Doc. No. 35-1), governed the terms and conditions of Plaintiff's purchase of product from BFBD and their business relationship. The products included a variety of well-established brands available from BFBD. (Doc. No. 35 at ¶ 20).

The Agreement contemplates that Plaintiff would purchase products from BFBD at a

certain price and then re-sell them to various customers at a higher price, earning a profit on the difference. (Doc. No. 35 at ¶ 30); see also (Doc. No. 75-3 at 8). Plaintiff alleges that the common practice was for Independent Operators ("IOs") to pick up the products from one of BFBD's facilities and deliver them to various stores in their specified area. (Doc. No. 35 at ¶ 29). Under the Agreement, the Plaintiff was also responsible for maintaining adequate supplies in the stores, rotating product, and removing stale or damaged product. (Doc. No. 35-1 at § 4.1).

The Agreement provides that Plaintiff is an independent contractor, and expressly states that "[n]o fiduciary relationship exists between the parties." (Id. at § 2.3). This provision notwithstanding, Plaintiff alleges that BFBD's managers routinely exerted supervisory and disciplinary control over Plaintiff and other IOs. (Doc. No. 35 at ¶ 33). The crux of Plaintiff's complaint involves allegations of interference by BFBD with the relationship between the IOs and their customers, including contacting store members about matters related to the IOs' businesses, and determining which products the IOs could distribute to various stores. See (id. at ¶¶ 33, 34, 79). Plaintiff also alleges that BFBD unreasonably controlled the IOs' profits through its representation of the IOs in negotiations with chain stores, (Id. at ¶¶ 42, 44, 84), through its negotiations of promotions with the IOs' customers, (Id. at ¶¶ 52, 90), and by allowing chain stores to use Scan-Based Trading ("SBT"), which imposes the cost of shrink onto IOs. (Id. at ¶¶ 59, 96).

In 2011, BFBD acquired a bakery division of Sara Lee and began promoting products that competed directly in the marketplace with those distributed by Plaintiff and other IOs. (Doc. No. 35 at ¶ 64). Plaintiff alleges several adverse consequences as a result of Defendant's promotion of Sara Lee products, including decreased shelf space and loss of sales. (Doc. No. 35 at ¶¶ 66, 102).

Plaintiff filed suit in this district on May 11, 2011, alleging violations of the federal Fair Labor Standards Act (FLSA) as well as various state law claims. (Doc. No. 1). Since then, the case was transferred to and from federal court in Pennsylvania where the FLSA claim was dismissed. (Doc. Nos. 21, 22). Plaintiff filed an Amended Complaint on October 23, 2013, with the remaining claims for breach of contract (Counts I-V), breach of fiduciary duty (Count VI), unfair and deceptive trade practices (UDTPA) (Count VII), and violations of the North Carolina Wage and Hour Act (NCWHA) (Count VIII). (Doc. No. 35). On July 11, 2014, Plaintiff filed a Motion to Certify Class, (Doc. No. 58). On June 1, 2015, the Court held a hearing on this Motion and Defendant's Motion for Summary Judgment, (Doc. No. 75). See (Doc. No. 109).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 23 sets forth a two-part test for certifying a class. First, the plaintiff must establish the four requirements under Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see also Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 423 (4th Cir. 2003). "These basic prerequisites are commonly referred to as numerosity, commonality, typicality, and adequacy, respectively." Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc., 254 F.R.D. 68, 71 (E.D.N.C. 2008). If each of these prerequisites is met, the putative class must then show that it fits into one of three categories enumerated in Rule 23(b). Fed. R. Civ. P. 23(b). Unless each prerequisite is met, a determination under Rule 23(b) is unnecessary. See

Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 337 n.3 (4th Cir. 1998).

When ruling on a motion for class certification, "a court should interpret Rule 23 in such a manner as to promote justice and judicial efficiency." Farrar & Farrar Dairy, Inc., 254 F.R.D. at 72. A court must accept the substantive allegations of the complaint as true. In re Kirschner Med. Corp. Sec. Litig., 139 F.R.D. 74, 81 (D. Md. 1991). Nonetheless, the burden of establishing the right to certification remains with the party seeking class certification. Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 314 (4th Cir. 2006). A class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982). "A district court has broad discretion in deciding whether to certify a class." Thorn, 445 F.3d at 317 (internal quotation marks omitted).

## III. DISCUSSION

### A. Rule 23(a)(2) Commonality

To meet the commonality prerequisite for class certification, Rule 23 requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality prerequisite does not require that all questions of law or fact be common to all putative class members, "rather, only a single common question must exist." Rodger v. Electronic Data Sys. Corp., 160 F.R.D. 532, 537 (E.D.N.C. 1995); see also Broussard, 155 F.3d at 344. Class certification will not be denied "solely because there are some factual variations among the members' grievances." Haywood v. Barnes, 109 F.R.D. 568, 577 (E.D.N.C. 1986)

A court weighs the common issues with the need for individual analysis to determine whether a class action is appropriate. When a case requires extensive individualized inquiry, it "will unduly burden the Court and the parties and will disserve the economy rationale that

renders the class action device useful." Mick v. Ravenswood Aluminum Corp., 178 F.R.D. 90, 93 (S.D. W. Va. 1998). "Class certification is only proper when a determinative critical issue overshadows all other issues." Stott v. Haworth, 916 F.2d 134, 145 (4th Cir. 1990). To that end, it "may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." Gen. Tel. Co. of Sw., 457 U.S. at 160. A court may, therefore, make a preliminary examination of the merits of a case to determine whether the cause of action requires too much individual attention for a proper class action. Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 186 (3d Cir. 2001).

In support of the commonality requirement, Plaintiff asserts that, across the proposed class, the questions in this case focus on a common written contract. (Doc. No. 63 at 20). Plaintiff further claims that all class members were subject to the same conduct or practice; therefore, the resolution of his own breach of contract claims against BFBD will also resolve the issue for all other class members. (Id.) Plaintiff relies on a series of broad questions to establish commonality amongst the putative class. (Id. at 20-21).

The Supreme Court in Wal-Mart Stores, Inc. v. Dukes, held that reciting questions which mirror the counts of the complaint is not sufficient to obtain class certification. 131 S. Ct. 2541, 2550-51 (2011). Plaintiff must show that the class members have suffered the same injury and that their claims "depend upon a common contention," the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 2551. Critical to the commonality prerequisite is not necessarily the existence of common questions but the ability of the class action to provide common answers that would resolve the litigation for all the class members. See id. Here, Plaintiff has failed to demonstrate the existence of common questions of law or fact, such that a class action proceeding would be appropriate.

Plaintiff suggests a common question of whether the Defendant breached its contractual obligation "by its uniform policy, applicable to all Class members, that allows BFBD personnel the unfettered freedom to unreasonably interfere with the IOs' businesses" (Doc. No. 63 at 20). Similarly to the case in <u>Dukes</u>, the Plaintiff here alleges a uniform "policy" of discretion by local supervisors, which "[o]n its face…is just the opposite of a uniform employment practice that would provide the commonality needed for a class action." 131 S.Ct. at 2554. While <u>Dukes</u> "did not set out a per se rule against class certification where subjective decision-making or discretion is alleged," in those cases it does require examination of "whether all managers exercise discretion in a common way with some common direction." <u>Scott v. Family Dollar Stores, Inc.</u>, 733 F.3d 105, 113 (4th Cir. 2013) (citations omitted). The Plaintiff claims that "BFBD has a uniform policy, applicable to all IOs, of allowing its personnel unfettered freedom to unreasonably interfere with the IOs' businesses." (Doc. No. 63 at 7). This allegation does not identify "a common mode of exercising discretion that pervades the entire company," and therefore does not establish commonality amongst the class. 131 S.Ct. at 2554-55.

This case is distinguishable from the one that produced the recent Fourth Circuit decision in <u>Brown v. Nucor Corp.</u>, 785 F.3d 895 (2015). The Plaintiffs in <u>Brown v. Nucor</u> sought class certification for their Title VII claim of discriminatory job promotion practices and a racially hostile work environment. <u>Id.</u> at 895. The Fourth Circuit noted that the case differed from <u>Wal-Mart v. Dukes</u>, particularly in that the class members worked in "a single steel plant…shared common spaces, were in regular physical contact with other departments, could apply for promotions in other departments, and were subject to hostile plant-wide policies and practices." <u>Id.</u> at 910. In the present case, Plaintiff and other class members were spread across the state of North Carolina, did not work in a single facility, and were in contact with dozens of managers

and BFBD personnel, whose own practices varied greatly. See (Doc. Nos. 59-5, 59-7, 59-8) (establishing distinct Sales Areas for several IOs); see, e.g., (Doc. No. 88-8 at 3, 5-7, 9) (describing individualized manager practices based on IO need). Unlike in Brown v. Nucor, the putative class members here were not in a "centralized, circumscribed environment [which] generally increases the uniformity of shared injuries." 785 F.3d at 910.

Brown v. Nucor also found that a policy of allowing discretion "for a localized, circumscribed class of workers at a single facility…can more easily form the basis of Title VII liability, particularly when paired with a clear showing of pervasive racial hostility." 785 F.3d at 916. The case here is neither a Title VII dispute, nor do the proposed class members work in such close proximity that a policy of discretion could be applied uniformly.

Furthermore, as noted by the Defendant, the record here displays a "wide variation in IO experiences" which defeat commonality. (Doc. No. 89 at 29). Plaintiff's allegations that BFBD gave its Sales Managers "absolute discretion" (Doc. No. 63 at 8) to interfere with the IOs' businesses demonstrate the disparity of experiences between each IO. (Doc. No. 63 at 9-10). Similarly, the declarations that Plaintiff's cites to demonstrate that "BFBD seeks no input from IOs prior to negotiating promotional prices" with chain stores, (Doc. No. 63 at 12), actually support Defendant's contention that IO experiences vary greatly, and lack the commonality necessary for a class action. See, e.g., (Doc. No. 71-1 at 43) (explaining that district managers may decide to hold monthly or quarterly meetings, or none at all, to solicit IO input). Defendant also correctly notes the fact-specific inquiry required to address each IO's claims concerning SBT and shrink, (Doc. No. 89 at 20), and the alleged competition between Sara Lee products and IO products, (Doc. No. 89 at 13-14).[1]

---

[1] Defendant also discusses the fact-specific inquiry required for Plaintiff's NCWHA claim in Count VIII, (Doc. No. 89 at 14), which was summarily dismissed by the Court in another order. If Count VIII had survived the Defendant's

Plaintiff's conclusory assertions that the widely varying experiences of the putative class members satisfy Rule 23(a)(2)'s commonality requirement are clearly belied by the record. The lack of a common question of law or fact combined with the recurring need for individualized inquiry make the Plaintiff's claims unsuitable for class-wide adjudication.

B. Rule 23(a)(3) Typicality

The typicality prerequisite requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). While the representatives' claims must be typical of, they need not be identical to, the claims of the other class members. Mick, 178 F.R.D. at 92. However, if a putative class representative is subject to unique defenses that could become the focus of the litigation, then class certification is inappropriate. Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990), *cert. denied* 498 U.S. 1025 (1991). In such a situation, there is a danger that the absent class members will be harmed if their representatives are preoccupied with their own, unique defenses. Id.

The Plaintiff's explanation of the typicality of his claims in comparison to those of the putative class are a mere recitation of the standard established by Rule 23(a)(3). A plaintiff must explain with "reasonable specificity" how proving the elements of his individual claim will also prove the class members' claims. See Gen. Tel. Co., 457 U.S. at 161 (finding that a plaintiff must be specific in describing the 23(a) requirements for the Court to be able to define the class and determine adequacy). Here, the Plaintiff's "argument was made at an unacceptably general level," and examination of the facts reveals "meaningful differences" between Plaintiff's claims

---

Motion for Summary Judgment, the eight-factor test required would provide another example supporting Defendant's Argument. See McCown v. Hines, 353 N.C. 683, 687 (2001) (describing the test for determining whether an individual was an employee or an independent contractor for purposes of an NCWHA claim).

and those of the putative class members. Deiter v. Microsoft Corp., 436 F.3d 461, 467 (4th Cir. 2006). As the Defendant noted, evidence of the merits of Plaintiff's individual claims are unlike those claims that he seeks to assert on behalf of the class members. (Doc. No. 89 at 33).

The Plaintiff testified in several instances to facts that contradict his claims presented on behalf of the proposed class. He admitted that he did not know who makes decisions on pricing or other terms of sale, (Doc. No. 88-7 at 18, 19, 23, 24), despite his claim that BFBD breached the Agreement "by its unilateral and unreasonable control of the profits of Plaintiffs and the Class." (Doc. No. 35 at ¶ 84). Plaintiff also admitted that the contract does not establish a fiduciary duty relationship between himself and BFBD, (Doc. No. 88-7 at 5), despite his claim that BFBD breached a fiduciary duty to Plaintiff and the class members through conduct which "put [BFBD's] own interests and the interests of the chain stores above the interests of Plaintiff and the Class." (Doc. No. 35 at ¶ 109). In the Amended Complaint, Plaintiff asserted that, "[t]o the extent that Defendant's conduct is viewed to stem from a breach of contract, Defendant's additional breach of its fiduciary duty constitutes substantial aggravating circumstances warranting protection under [the Unfair and Deceptive Trade Practices Act]." (Doc. No. 35 at ¶ 116). However, in his deposition he could not articulate a single way in which his breach of fiduciary duty claims were distinct from his breach of contract claims. (Doc. No. 89 at 4-5).

These facts demonstrate that Plaintiff is "subject to unique defenses which threaten to become the focus of the litigation," indicating a lack of the typicality necessary to justify class certification. Gary Plastic, 903 F.2d at 180. Plaintiff's conclusory explanation of the typicality of his claims, combined with the evidence offered by Defendant establishing inconsistencies between Plaintiff's claims and those of the class members, indicate that the typicality requirement is not satisfied in this case.

C. Rule 23(a)(4) Adequacy of Representation

The final component of Rule 23(a) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R.Civ.P. 23(a)(4). This prerequisite is met when: "(1) the named plaintiff has interests in common with, and not antagonistic to, the Class' interests; and (2) the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation." In re Se. Hotel Props. Ltd. P'ship Inv'r Litig., 151 F.R.D. 597, 606-07 (W.D.N.C. 1993) (citations omitted). The Defendants have the burden of proving the representation is inadequate. Id. at 607 (citations omitted).

Plaintiff has no problem meeting the second prong of the adequacy requirement. Counsel is seasoned and capable of conducting the litigation. In support of the first prong of the adequacy requirement, Plaintiff simply states that he "shares with the Classes the same interest in establishing BFBD's liability," and that he "is committed to vigorously prosecuting this action and has no interests that are adverse to the proposed Classes." (Doc. No. 63 at 22). As with the typicality requirement, the Plaintiff here has failed to demonstrate that he would represent the class members such that their interests would "be fairly and adequately protected in their absence." Gen. Tel. Co., 457 U.S. at 157, n.13. The conflicts between Plaintiff's testimony and the claims brought on behalf of the class, and especially the existence of defenses unique to the Plaintiff, indicate that the Plaintiff would be an inadequate class representative. As the Defendant argued, if some IOs have viable claims against BFBD, it would be fundamentally unfair for them to be bound to a judgment based on Plaintiff's individual claims. (Doc. No. 89 at 34).

Because Plaintiff has failed to meet the Rule 23(a) prerequisites of commonality, typicality, and adequacy, the Court forgoes analysis of numerosity as well as a determination under Rule 23(b). Broussard, 155 F.3d at 337 n.3.

## IV. CONCLUSION

The Court finds that the Plaintiff has failed to establish all of the Rule 23(a) prerequisites for class certification.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Certify Class, (Doc. No. 58), is **DENIED**.

Signed: August 31, 2015

Robert J. Conrad, Jr.
United States District Judge